IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

JUL 2 3 2014

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

**KENNETH HAROLD HOGAN,**

**Petitioner-Defendant,**

v.

Civil Action No. 3:13-cv-86
Criminal Action No. 3:12-cr-35
(Judge Groh)

**UNITED STATES OF AMERICA,**

**Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

## I. INTRODUCTION

On July 22, 2013, Kenneth Harold Hogan ("Petitioner"), proceeding pro se, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 3:13-cv-86, Docket No. 1; Criminal Action No. 3:12-cr-35, Docket No. 29-2.) On July 23, 2013, the Clerk of Court mailed Petitioner a Notice of Deficient Pleading, which informed him that he had twenty-one (21) days to correct his Motion by filing it on the correct form as per Local Rule of Prisoner Litigation Procedure 3.4. (Docket No. 32.)[1] Petitioner filed his correct form ("Court-Approved Motion") on August 1, 2013. (Docket No. 34.) On August 2, 2013, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 36.) The Government filed its response on August 30, 2013. (Docket No. 42.)

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

---

[1]From this point, all docket numbers refer to entries in Criminal Action No. 3:12-cr-35.

## II. FACTS

*A.     Conviction and Sentence*

On April 6, 2012, the United States Attorney's office filed a two-count Information charging Petitioner with knowingly making and aiding in making a false and fraudulent statement and claim for the purpose of causing an award and payment to be made, in violation of 45 U.S.C. § 2311 and willfully attempting to evade and defeat the income tax due and owing by him, in violation of 26 U.S.C. § 7201. On April 17, 2012, Petitioner appeared before retired United States Magistrate Judge David J. Joel to enter a guilty plea to the Information pursuant to a written plea agreement that he had signed on March 23, 2012. Petitioner waived his right to prosecution by Indictment and consented to proceed by Information. (Docket No. 5.) In his written plea agreement, Petitioner waived his right to appeal and collaterally attack his sentence. Specifically, Petitioner's plea agreement contained the following language concerning his waiver:

> Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. **The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus).** The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Docket No. 6 at 4 (emphasis added).)

At the time of his plea, Petitioner was 50 years old and stated that he had reached the twelfth

grade in formal schooling. (Docket No. 39 at 3:18-20.) Defense counsel stated that Petitioner had limited reading abilities. (Id. at 2:19-21.) Petitioner had never been treated for mental illness or addiction to controlled substances, and he had no type of disability or hearing impairment. (Id. at 3:21-4:2.) Subsequently, the following colloquy occurred:

> THE COURT: Mr. Powell, do you believe that your client fully understands the importance of the waiver?
>
> MR. POWELL: Yes, Sir.
>
> THE COURT: Mr. Hogan, did you review the plea agreement in detail with your attorney before you signed it?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Does the written plea agreement represent the full and complete agreement between yourself and the Government?
>
> THE DEFENDANT: Yes, Sir.

(Id. at 13:24-14:9.) Petitioner also confirmed his understanding that the written plea agreement contained the full agreement between himself and the Government. (Id. at 14:5-9.) The Court reviewed all the rights Petitioner was foregoing by entering a plea of guilty. (Id. at 20:15-22:7.) Based on that review, the Court determined that Petitioner understood the consequences of his plea of guilty. (Id. at 22:8-10.) During the hearing, the Government presented a summary of the evidence it would have used at trial to establish a factual basis for the plea. (Id. at 22:11-25:14.)

Petitioner advised the Court that he was guilty of the two-Count Information. (Id. at 25:15-26:2.) Additionally, Petitioner testified under oath that no one had attempted to force him to plead guilty and that his plea was not the result of any promises other than those contained in the plea agreement. (Id. at 26:3-17.) When asked, Petitioner acknowledged that his counsel had adequately

represented him and that his counsel had not left anything undone regarding his defense. (Id. at 27:5-11.) In conclusion, Magistrate Judge Joel determined that Petitioner was competent to enter a plea of guilty, that Petitioner's plea "was freely and voluntarily made", that Petitioner had "full knowledge and understanding of the consequences of the plea", and that there was a basis in fact for the plea. (Id. at 27:15-22.) Petitioner did not object to this finding.

Petitioner appeared before United States District Judge Gina M. Groh for sentencing on September 10, 2012. Judge Groh accepted Petitioner's plea agreement and his guilty plea (Docket No. 40 at 5:17-20.) During the hearing, Petitioner acknowledged that he had received the presentence investigation report and had "gone over it to [his] satisfaction with [his] lawyer." (Id. at 3:7-14.) Petitioner's counsel offered a lengthy argument requesting a sentence that did not require incarceration. (Id. at 8:17-15:9.) The Court sentenced Petitioner to 12 months of incarceration on Count 1, and 18 months of incarceration on Count 2, to be served concurrently. (Id. at 27:12-17.)

## B.   Direct Appeal

Petitioner did not file a direct appeal.

## C.   Federal Habeas Corpus

### 1.   Petitioner's Motion

In his motion, Petitioner raises the following claims:

1. Trial counsel rendered ineffective assistance of counsel during the investigatory stage of the case;

2. Trial counsel rendered ineffective assistance of counsel during the plea negotiation; and

3. Trial counsel rendered ineffective assistance of counsel during sentencing.

4

(Docket No. 29-2 at 5.)

### 2. Government's Response

In opposition to Petitioner's motion, the Government asserts the following:

1. Petitioner is bound by the allegations he made during the plea colloquy; and

2. Petitioner's motion should be dismissed because he waived his right to file it pursuant to his written plea agreement.

(Docket No. 42 at 4-6.)

## III. ANALYSIS

### A. *Applicable Law Regarding Petitioner's Waiver*

#### 1. Law Governing Waivers of Direct Appeal and Collateral Attack Rights

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir.

1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[2] However, several courts have held that collateral

---

[2] The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." Braxton, 358 F. Supp. 2d at 503.

### 2. Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

## B. *Petitioner's Ineffective Assistance of Counsel Claims*

### 1. Standard Governing Claims of Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and

"prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

2. **Petitioner's Claims of Ineffective Assistance Prior to Plea Colloquy**

In his motion, Petitioner alleges that counsel's "conduct, during the pre-plea and plea negotiation phases of the case was objectively unreasonable." (Docket No. 29-2 at 7.) Petitioner

argues that counsel "failed to conduct any pre-trial discovery or to secure and share with [Petitioner], the Government's case discovery and evidence." (Id.) Petitioner further argues that the "principle premise for [counsel's] recommendation that [Petitioner] plead guilty was factually flawed; namely, that [Petitioner's] failure to file a personal tax return for the tax years in question necessarily meant that [he] had intentionally attempted to evade or defeat his Federal tax obligations." (Id. at 8.) As an initial matter, these claims are insufficiently pled. "Habeas petitions must meet heightened pleading requirements . . . ." See McFarland v. Scott, 512 U.S. 849, 856 (1994). Accordingly, a petitioner must present evidence that his claims have merit. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogation on other grounds recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Here, Petitioner has not provided any factual support for these claims; accordingly, for this reason, the undersigned recommends that they be dismissed.

Even if Petitioner had provided support for these claims, they fall within the scope of Petitioner's collateral attack waiver because they assert ineffective assistance of counsel for conduct occurring before the entry of Petitioner's guilty plea. See Lemaster, 403 F.3d at 220 & n.2; Cannady, 283 F.3d at 645 n.3; Attar, 38 F.3d at 731, 732; Braxton, 358 F. Supp. 2d at 503. A defendant who enters a voluntary guilty plea cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also Menna v. New York, 423 U.S. 61, 62 n.2 ("A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.").

The undersigned finds that Petitioner's waiver of his right to file a motion pursuant to 28

U.S.C. § 2255 was knowing and intelligent. See Attar, 38 F.3d at 731. During the Rule 11 plea colloquy, Petitioner testified that he had reached the twelfth grade and that he had no hearing impairment or disability that would prevent him from participating in the hearing. (Docket No. 39 at 3:18-4:2.) He also testified that he had not taken any medication, drugs, or alcohol within the previous 24 hours. (Id. at 3:5-7.) Petitioner testified that he had reviewed the plea agreement in detail with counsel before he signed it. (Id. at 14:2-5.) The Court reviewed all the rights Petitioner was foregoing by entering a plea of guilty. (Id. at 20:15-22:7.) Petitioner asserted that he understood the consequences of his plea agreement throughout the Rule 11 colloquy. At the conclusion of the plea colloquy, Magistrate Judge Joel found that Petitioner's plea was made freely and voluntarily, that Petitioner was competent to make a plea of guilty, that Petitioner had "full knowledge and understanding" of the consequences of his guilty plea, and that there was a basis in fact for the plea. (Id. at 28:17-24.) Therefore, the undersigned finds that Petitioner knowingly and intelligently waived his right to collaterally attack his sentence as part of his plea agreement. (Id. at 27:15-22.) Accordingly, the undersigned recommends that Petitioner's claims regarding counsel's conduct before the plea hearing be dismissed.

### 3. Petitioner's Claim Regarding Ineffective Assistance of Counsel and the Validity of His Guilty Plea

Petitioner argues that "it was objectively unreasonable for [counsel] to insist that [Petitioner] execute/sign a Plea Agreement that did not factually comport with the charging documents in the case." (Id. at 9.) He argues that counsel's performance "materially prejudiced [Petitioner] who, but for [counsel's] unreasonable conduct, would have insisted on proceeding to trial." (Id. at 10.) He argues that "he was not and could not have possibly been liable for a restitution amount of $90,833

10

for tax years 2006-2008," and that counsel should have objected "to paragraph 10's inclusion of erroneous and wholly unsupported income and income tax figures for fiscal years 2006-2008." (Id. at 9-10.)

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack, but can be so challenged on the ground that the plea was not knowing or voluntary. Bousley v. United States, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267. However, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

The undersigned has already determined that Petitioner's plea was knowing, voluntary, and intelligent. During the Rule 11 plea colloquy, Petitioner testified that the written plea agreement represented the full and complete agreement. (Id. at 14:6-9.) Petitioner testified that he understood that he was agreeing to pay restitution to the IRS in the amount of $90,833, and to the United States Railroad Retirement Board in the amount of $128,568. (Id. at 18:6-10.) He further testified that he was pleading guilty of his own free will, that no one had attempted to force or threaten him to plead guilty, and that his plea was not the result of any promises other than those contained in his written plea agreement. (Id. at 26:3-24.) Petitioner stated that counsel had adequately represented him, and that there was nothing that counsel had not done that Petitioner thought he should have done or

anything that counsel did improperly. (Id. at 27:5-11.)

Overall, Petitioner asserted that he understood the consequences of his plea agreement throughout the Rule 11 colloquy. Although Petitioner now claims that counsel failed to adequately represent him, "[a]bsent clear and convincing evidence to the contrary, [he] is bound by the representations he ma[de] under oath during [his] plea colloquy." Fields, 956 F.2d at 1299. Accordingly, given Petitioner's statements during the Rule 11 colloquy, the undersigned finds that Petitioner's claims of ineffective assistance regarding his plea agreement are meritless and recommends that they be dismissed.

### 4. Petitioner's Claim of Ineffective Assistance at Sentencing

Petitioner asserts that counsel's "failure to file a sentencing memorandum properly focused on the Government's erroneous loss and restitution calculations constituted objectively unreasonable conduct." (Docket No. 29-2 at 10.) He further argues that "had [counsel] sufficiently demonstrated that no loss amount or restitution amount resulted from [Petitioner's] conduct, it is likely that [Petitioner's] resulting sentence would have likely been a probationary sentence as opposed to an eighteen month term of imprisonment." (Id. at 11.) He argues that the restitution amounts of $90,833 and $128,568 were unsupported, and that counsel should have argued accordingly at sentencing. (Id. at 10- 11.)

"[I]n the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted). As stated above, during the Rule 11 plea colloquy, Petitioner testified that he understood he was agreeing to pay restitution to the IRS in the amount of $90,833, and to the

United States Railroad Retirement Board in the amount of $128,568. (Id. at 18:6-10.) Further, he testified that he understood the concept of relevant conduct and that he had stipulated and agreed to the total relevant conduct of $128,568 in tax loss as to Count 1, and $90,833 in tax loss as to Count 2. (Docket No. 39 at 19:9-18.) These sworn statements directly contradict those made in Petitioner's § 2255 motion regarding the restitution amounts. Counsel was not required to argue the restitution issue because Petitioner acknowledged that he agreed to the above restitution amounts during the plea hearing. Blackledge, 431 U.S. at 73-74; see United States v. Bryant, 20 F. App'x 160 (4th Cir. 2001) (per curiam). Also, at sentencing, counsel argued extensively for a probationary sentence. Therefore, Petitioner has not demonstrated that counsel acted unreasonably. See Strickland, 466 U.S. at 687. Further, Petitioner cannot demonstrate the requisite prejudice for his claim. See id. at 691. For these reasons, the undersigned recommends that Petitioner's claim of ineffective assistance of counsel at sentencing be dismissed.

## IV. OTHER MATTERS

On March 31, 2014, Petitioner filed a Motion to Convert Pending 28 U.S.C. § 2255 Motion to a Motion for Writ of Coram Nobis. (Docket No. 47.) A writ of error coram nobis pursuant to 28 U.S.C. § 1651 can be used to vacate a conviction when there is a fundamental error resulting in conviction and no other means of relief is available. United States v. Morgan, 74 S.Ct. 247 (1954); United States v. Mandel, 852 F.2d 1067, 1074-75 (4th Cir.1988). It is generally used to review errors in fact that were either unknown at the time of trial or withheld from the trial. United States v. Denedo, 129 S.Ct. 2213, 2221 (2009). Since a writ of error coram nobis can only be obtained after the completion of a sentence, it has the effect of returning them to a pre-conviction state. United States v. Johnson, 237 F.3d 751, 755 (6th Cir.2001).

The Fourth Circuit has noted that a prisoner on supervised release is considered to be "in custody" for purposes of a § 2255 motion. United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999). Because the term of supervised release carries with it the possibility of revocation and additional prison time, supervised release satisfies the in-custody requirement. 16A Fed. Proc., L. Ed. § 41:25. Here, although Petitioner was released from the custody of the BOP on January 27, 2014, he remains subject to a one year period of supervised release for Count 1, and a 3 year period of supervised release for Count 2, to run concurrently. Therefore, he remains in custody and may not convert his § 2255 to a writ of error coram nobis.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:13-cv-86, Docket No. 1; Criminal Action No. 3:12-cr-35, Docket No. 29-2) be **DENIED**. The undersigned further recommends that Petitioner's Motion to Convert Pending 28 U.S.C. § 2255 Motion to a Motion for Writ of Coram Nobis (Criminal Action No. 3:12-cr-35, Docket No. 47) be **DENIED**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas

v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Kenneth Harold Hogan.

DATED: July 23, 2014

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE